In the Matter of the Accounting of FREDERIC R. COUDERT et al., as Executors of JOHN J. HOFF, Deceased.

Surrogate's Court, New York County, February 26, 1945.

*Thomas W. Kelly* for Frederic R. Coudert and another, as executors, petitioners.

*James N. Vaughan,* Special Guardian for Alix E. Labouchere and others, infant remaindermen, and Charles D. Labouchere, a person in military service, respondents.

*James L. Duncanson,* attorney designated by Alien Property Custodian to represent Ernest A. Labouchere and others, persons in enemy-occupied territory, respondents.

FOLEY, S. The issues in this contested accounting proceeding are disposed of as follows: (1) The compensation of the attorneys for the executors is allowed in the amount requested and payment thereof is confirmed. The objections which seek a surcharge for interest from the dates of the payments made on account of attorneys' fees are overruled. (*Matter of Israel,* 176 Misc. 120, 123.) No basis for a surcharge exists.

(2) The claim of the law firm, of which the individual executor is a member, for professional services rendered in the lifetime of the testator is allowed in the amount requested. Its payment is confirmed and approved. The objections which seek a surcharge of interest from the date of its payment are overruled.

(3) The objections which seek a surcharge for interest on the payment of commissions from the date of such payment are overruled. Two grounds exist for that disposition.

Upon the first ground, the evidence shows that the payments were made in good faith and, in effect, under the compulsion of the Government in order to obtain the proper deductions from the gross estate in the assessment of the Federal estate tax. The Government fixed a deadline date for payment. In the brief time afforded, it was impossible to account formally and obtain

a decree directing payment of commissions. The executors did not at the time seek the payment of their commissions. They were required to take them in order to protect the pecuniary interests of the beneficiaries. While the ordinary rule is that commissions may not be paid without the prior authority of a decree in the accounting proceeding, the extraordinary and special circumstances shown here are sufficient to justify the executors' conduct and excuse any surcharge for interest on the withdrawal of commissions.

Upon the second ground, the consents of the life beneficiaries to the payment of commissions and the waiver of any right to interest on the premature payments, which would constitute income payable to them, have relieved the executors of any liability. No ground of surcharge therefore exists.

(4) The remaining objections are directed to the alleged excessive computation and payment of the amount of commissions taken by the executors. These objections are also overruled. The executors computed their commissions in the Federal estate tax assessment under the ordinary procedure upon the values fixed by the government. These values were fixed, necessarily, as of the date of the death of the testator.

The objectants claimed that there was an excessive payment of commissions in the sum of approximately $20,000. They contend that there had been a shrinkage in value of a large block of stock of a certain corporation between the date of death and the date of the reception of these securities by the executors. Their contention is overruled.

The general rule is that the title of the executor relates back to the death of the testator. Under the provisions of subdivision 5 of section 285 of the Surrogate's Court Act, the " value of any real or personal property " is to be " determined in such manner as the surrogate may direct * * *." It has been the customary practice of the Surrogates to accept the values fixed in the estate tax proceedings as of the date of death as the basis for the allowance of the principal receiving commissions of the executor. (*Matter of Baldwin,* 157 Misc. 692, 697, affd. 250 App. Div. 767.) The rule is based upon convenience and economy. Thereby any increase or decrease in the value of the assets between the date of death and the date of the qualification of the executor or the time of the taking over the assets may be disregarded for convenience. Moreover, the acceptance of such death values avoids the expense of a reappraisal at the time of the issuance of letters or of the actual reception of the assets. In estates where part of the assets consisted of tangible

personal property, such as jewelry or objects of art or mortgages or stock in closely held corporations, the requirement of a new appraisal would impose unnecessary and burdensome expense upon the residuary beneficiaries.

In the present estate, because of the necessity of locating the heirs, some of whom resided in France, a delay of approximately six months occurred between the date of death and the issuance of letters testamentary. There was not the slightest evidence of bad faith on the part of the executors in this delay. It was excusable and due to extraordinary circumstances incident to war conditions. Indeed, the executors might have, upon a mere request, been granted appointment as temporary administrators immediately after death. Their good faith is shown in the fact that they saved the estate the expense of the premium upon a large bond which would have been required to have been given by an individual temporary administrator. They also saved for the beneficiaries the expense of a separate accounting, if temporary administrators had been appointed.

Further justification for the adoption of death values as a basis for the award of commissions exists because of the complications and difficulties which arose in the Federal estate tax assessment and the peril of reopening it by the present reduction of commissions upon the values at the time of receiving, as contrasted with death values. If the reduction of commissions contended for by the objectants in the sum of about $20,000 should be approved, the net saving to the residuary legatees on its face would be about $10,000, since the additional tax in an approximate 50% bracket would have to be paid by reason of the reduction of the deduction for commissions. But there is a greater peril because the reopening of the estate tax proceeding might lead to a great increase in the Federal estate taxes in view of a change in the appraisal of a large block of securities. As compared with the possible gross saving of $10,000, it would be a senseless operation to risk subjecting the shares of the remaindermen to a liability of several times that alleged saving.

In the exercise of the discretion conferred upon the Surrogate by the above-quoted provisions of section 285 of the Surrogate's Court Act, I accordingly determine that death values in this proceeding are the proper basis for the computation of the commissions of the executors. The objections on this issue are therefore overruled.

Submit decree on notice settling the account accordingly.