OPINION OF THE COURT
John D. Bennett, S.
In this executors’ voluntary judicial accounting the guardian ad litem for the infant income beneficiaries of the residuary trust objects to petitioners’ method of valuation of the listed securities distributed in kind to themselves as trustees.
Testatrix provided for the disposition of her residuary estate by paragraph eighth of her will. In subparagraph A she gave one fifth of the residuary in various proportions to named persons. The executors satisfied these residuary legacies by a cash payment to each legatee. In subparagraph B she gave the remaining four fifths to her trustees in trust, to pay or apply the income among her daughter and her issue in such amounts as the fiduciaries may determine during the lifetime of her daughter. Upon her daughter’s death the principal was to be paid to her daughter’s issue. A corporate fiduciary and her daughter were named executors and trustees.
To satisfy the gift in trust petitioners made a distribution in kind of listed securities held by the estate using stock exchange closing prices on the date of distribution plus cash. The guardian ad litem in her report indicates that if these securities were valued at their mean price on the date of distribution the executors would be required to pay to the trustees $656.26 more than was shown in their account. Counsel for petitioners contend that where distribution in kind of listed securities is made it is customary for fiduciaries to use closing prices as of the date of distribution in valuing the same.
SCPA 2216 authorizes a fiduciary to make distribution in kind in lieu of the money value of the property "at the fair market value at the date of distribution” (see, also, EPTL 11- *936 1.1, subd [b], par [21]; EPTL 2-1.9). Neither the guardian ad litem nor counsel for the fiduciaries has furnished the court with any cases to support their respective positions as to the valuation of the listed securities distributed in kind.
In accounting for estate assets it has long been the practice for fiduciaries, and accepted by the courts, to use the date-of-death values determined in the Federal estate tax proceedings as the basis for property received by them (Matter of Hoff, 186 Misc 684, affd 270 App Div 891, affd 296 NY 650; Matter of Nickelsburg, 34 Misc 2d 82; 3 Harris, Estates Practice Guide, § 753, p 59; 4 Warren’s Heaton, Surrogates’ Courts, § 350, subd 1, par [f]; see Tomlinson, Administration of Decedents’ Estates, § 8.2 et seq.). To all intents and purposes the New York gross estate is the same as the Federal gross estate (Tax Law, § 961). The valuation of estate assets is generally market value (Fed Internal Revenue Serv Regulation 20.2031-(b); CCH Fed Estate and Gift Tax Reporter, par 1200). As to publicly traded securities either on stock exchanges or over the counter, their market price is generally the mean sale or bid-and-asked price as of the date of death or the alternate valuation date with modifications where there are no sales or trades on the date in question (Regulation 20.2031-2; CCH, supra, par 1202) which contains detailed examples for the computation of the mean price in various situations.
 Where there is a residuary distribution in kind of the same security to various beneficiaries it makes no difference whether the valuation date is mean, closing or opening price provided the same method is used in all instances and the result is fair. Where one proportionate bequest is satisfied in cash and another satisfied by a distribution in kind, it is important that all beneficiaries be treated equally and fairly. This is best illustrated by the fact that the bequests under subparagraph A were satisfied in cash and the bequests under subparagraph B in kind to the detriment of the beneficiaries named in subparagraph B (Tomlinson, Administration of Decedents’ Estates, §§ 18.6-4, 18.6-4b). In a volatile market such as exists at present there can be a substantial difference between opening and closing as well as high and low prices in any given security in a given day. In the absence of an actual sale, the use of a mean price between high and low or bid and asked is fair and equitable to all persons involved. The court *937 can see no logic in requiring the fiduciary to use the mean price for inventory value and closing price for distribution.
The court’s independent research indicates that only one reported case sanctioned use of the closing price (Matter of Nickelsburg, supra). In that case a corporation whose stock had been held by decedent owned listed securities which it customarily valued on its books at closing prices. Objectant’s contention that the securities should be valued at mean price rather than closing was overruled. Nickelsburg, however, did not involve a distribution in kind.
The court sustains the objection of the guardian ad litem and directs the fiduciaries to amend their account and the proposed distribution. No order need be entered hereon unless counsel so desire, in which event settle order on five days’ notice with three additional days if service is made by mail.